FROHRIEP v FLANAGAN

Docket No. 273426. Submitted May 1, 2007, at Lansing. Decided May 10, 2007, at 9:00 a.m. Leave to appeal sought.

Eric C. Frohriep and all others similarly situated brought a tort action in the Ingham Circuit Court against Michigan Department of Education (MDE) officials Michael P. Flanagan, Jeremy M. Hughes, and Frank P. Ciloski in their individual capacities, alleging that the defendants, in their efforts to implement legislation that required the MDE to compare its lists of education personnel with lists compiled by the Michigan State Police of people with criminal convictions, had falsely identified the plaintiffs as having criminal convictions. The trial court, Beverley Nettles-Nickerson, J., granted summary disposition in favor of the defendants on the ground that an action brought by the Michigan Education Association involving the same claims between the same parties was pending. After the plaintiffs' motion for reconsideration was denied, they appealed.

The Court of Appeals *held*:

The trial court erred by granting summary disposition on the ground that there was another action pending between the same parties involving the same claim, because the present case involves individuals suing individuals for money damages whereas the other action was brought by a corporate entity against another corporate entity for declaratory and injunctive relief. Nevertheless, the defendants were entitled to summary disposition because the plaintiffs' tort claims were barred by governmental immunity.

Affirmed.

1. ABATEMENT AND REVIVAL — MULTIPLE ACTIONS — SUMMARY DISPOSITION.

Summary disposition is improperly granted on the ground that there was another action pending between the same parties involving the same claim where the second action involves individuals suing individuals for money damages and the first was brought by a corporate entity against another corporate entity for declaratory and injunctive relief (MCR 2.116[C][6]).

2. GOVERNMENTAL IMMUNITY — REVISED SCHOOL CODE — CRIMINAL CONVICTION
INFORMATION — RELEASE.

A plaintiff must plead facts in avoidance of governmental immunity
to recover tort damages against an officer or employee of the
Michigan Department of Education who releases inaccurate infor-
mation regarding criminal convictions of certain education person-
nel in the course of complying with mandates of the Revised School
Code directing a comparison of lists of education personnel with
the criminal conviction records of the Michigan State Police (MCL
380.1230d[7]; MCL 380.1535a[15]; MCL 691.1401 *et seq.*).

*Hubbard, Fox, Thomas, White & Bengtson, P.C.* (by
*Michael G. Woodworth, Thomas A. Bengtson,* and *Mark
T. Koerner*), for the plaintiffs.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*,
Solicitor General, and *Denise C. Barton*, Assistant At-
torney General, for the defendants.

Before: MARKEY, P.J., and SAWYER and BANDSTRA, JJ.

MARKEY, P.J. This lawsuit is one of several filed in
state and federal courts challenging the actions of the
Michigan Department of Education (MDE) in imple-
menting certain school safety legislation that took ef-
fect on January 1, 2006.[1] The named plaintiff, a certi-
fied teacher and a member of the Michigan Education
Association (MEA), alleges that defendants falsely iden-
tified him and others similarly situated as having
criminal convictions, which rendered defendants liable
for several torts, including libel per se, interference
with plaintiffs' business expectancy, intentional inflic-
tion of emotional distress, and invasion of privacy. The

---

[1] 2005 PA 124, 125, 129, 130, 131, and 138 amended parts of the
Revised School Code, the teacher tenure act, and the Code of Criminal
Procedure. We refer to these acts as the school safety legislation, which
generally required the identification of people with certain criminal
convictions to preclude those people from being employed by Michigan's
schools.

trial court granted defendants' motion for summary disposition under MCR 2.116(C)(6). Plaintiffs appeal by right. We affirm, but on grounds other than those assigned by the trial court.

### I. SUMMARY OF FACTS AND PROCEEDINGS

All three defendants are high-ranking officials of the MDE. Defendant Michael P. Flanagan was and is the superintendent of public instruction, the principal executive officer of the MDE. Const 1963, art 8, § 3; *Berlin v Superintendent of Public Instruction,* 181 Mich App 154, 161; 448 NW2d 764 (1989). Defendant Jeremy M. Hughes was and is the chief academic officer and deputy superintendent of the MDE. Defendant Frank P. Ciloski was and is the supervisor of client services.

The alleged torts in this case arose from the effort of the MDE to implement 2005 PA 130, which amended § 1535a of the Revised School Code (RSC), MCL 380.1 *et seq.*, and 2005 PA 131, which added § 1230d to the RSC, effective January 1, 2006. Subsection 7 of § 1230d provided:[2]

> The department of information technology shall work with the department [of education] and the department of state police to develop and implement an automated pro-

---

[2] The Legislature twice amended § 1230d(7) and § 1535a(15) of the RSC in 2006. The first amendment, 2006 PA 84, effective March 31, 2006, addressed some of the concerns raised by this litigation by inserting after "July 1, 2008" the following language:

> The department of state police shall take all reasonable and necessary measures using the available technology to ensure the accuracy of this comparison before transmitting the information under this subsection to the department. The department shall take all reasonable and necessary measures using the available technology to ensure the accuracy of this comparison before notifying a school district, intermediate school district, public school academy, or nonpublic school of a conviction.

gram that does a comparison of the department's list of registered educational personnel with the conviction information received by the department of state police. Unless otherwise prohibited by law, this comparison shall include convictions contained in a nonpublic record. The department and the department of state police shall perform this comparison during January and June of each year until July 1, 2008. *If a comparison discloses that a person on the department's list of registered educational personnel has been convicted of a crime, the department shall notify the superintendent or chief administrator and the board or governing body of the school district, intermediate school district, public school academy, or nonpublic school in which the person is employed of that conviction.* [MCL 380.1230d(7), as adopted by 2005 PA 131; emphasis added.]

## Subsection 15 of § 1535a of the RSC, effective January 1, 2006, provided:[3]

The department of information technology shall work with the department [of education] and the department of state police to develop and implement an automated program that does a comparison of the department's list of individuals holding a teaching certificate or state board approval with the conviction information received by the department of state police. Unless otherwise prohibited by law, this comparison shall include convictions contained in a nonpublic record. The department and the department of state police shall perform this comparison during January and June of each year until July 1, 2008. *If a comparison discloses that a person on the department's list of individuals holding a teaching certificate or state board approval has been convicted of a crime, the department shall notify the superintendent or chief administrator and the board or governing body of the school district, intermediate school district, public school academy, or nonpublic school in which the person is employed of that conviction.* [MCL 380.1535a(15), as amended by 2005 PA 130, effective January 1, 2006; emphasis added.]

---

[3] See n 2, *supra*.

Plaintiffs allege in their complaint that before January 1, 2006, defendants began gathering the data required to make the comparisons that the new legislation requires. Plaintiffs attached to their complaint an affidavit by defendant Hughes dated February 9, 2006, which avers that the MDE "undertook an initial attempt late last year, before the legislation went into effect, to perform the database comparison" required by subsection 7 of § 1230d. Hughes acknowledges in his affidavit that it was expected the comparison would result in some "false hits" because some data fields, such as social security numbers, might match, but "the associated educational personnel had not in fact been convicted of the associated conviction." Further, Hughes averred that the MDE "expected that final resolution and final confirmation of the information disclosed on the comparison would be resolved by the school district, or public school academy in consultation with the employee because this would be the most expeditious way to verify the conviction information."

Plaintiffs allege that on November 8, 2005, general counsel for the MEA wrote to defendant Flanagan expressing concern that the release of inaccurate criminal history records would irreparably harm its members. Counsel requested that the criminal convictions list not be released publicly until those named were afforded an opportunity to demonstrate that they had been erroneously listed. By letter dated December 22, 2005, defendant Flanagan responded. He noted that the law "specifically requires the [MDE] to notify the employer and does not speak to prior notification of the employee." Flanagan enclosed information regarding procedures to have the Michigan State Police correct inaccuracies in the criminal histories it records. Finally,

Flanagan suggested that counsel contact defendant Ciloski if counsel needed further clarification on the school safety legislation.

On January 30, 2006, the MEA filed a lawsuit in the Ingham Circuit Court against the MDE and defendant Flanagan in his official capacity as the superintendent of public instruction. *Michigan Ed Ass'n v Michigan Dep't of Ed*, Ingham Circuit Court (Docket No. 06-123-CZ). The MEA sought injunctive relief to protect its members' due process right to continued employment and to protect its members' reputations from irreparable harm. The MEA also sought declaratory relief to prevent the public release of the criminal history comparison data regarding school employees. Circuit Judge Joyce Draganchuk issued an order on the day the complaint was filed temporarily restraining the MDE and its officers, agents, and employees from releasing a list of school employees to the public. After a hearing, the temporary restraining order (TRO) was converted to a preliminary injunction on February 10, 2006, that prohibited the MDE, Superintendent Flanagan, or any other governmental entity in possession of the comparison data compilation from disseminating it to the public.

Notwithstanding the MEA lawsuit and the TRO, the MDE, through a letter by defendant Flanagan dated January 31, 2006, distributed to the various school districts, intermediate school districts, public school academies, and nonpublic schools throughout the state, lists of employees in the pertinent school system with criminal convictions. These lists were distributed on or about February 1, 2006. Flanagan's letter requested the recipient school administrators to report on the status of the listed employees to Ciloski within 60 days. The letter also enclosed instructions for correcting mistaken or inaccurate conviction records. Flanagan's letter also

explained that an employee with a conviction for a "listed offense"[4] must be dismissed; an employee with a felony conviction for an offense not listed could be retained by the school district if the school board and its superintendent both agreed in writing to do so; and the school district could retain without further action employees with convictions for misdemeanors that were not "listed offenses." Plaintiffs allege the list of school employees with criminal convictions sent to their employers falsely accuses them of having criminal convictions.

By letters dated February 21, 2006, plaintiffs' counsel demanded retractions from the MDE and defendants on behalf of plaintiff Frohriep and all similarly situated school employees. Counsel also included a notice of intent to file a claim pursuant to MCL 600.6431. An assistant attorney general (AAG) responded by letter dated February 24, 2006. The AAG notified plaintiffs' counsel that a federal temporary restraining order had been entered on February 14, 2006, which required the MDE to recall the lists of school employees with alleged convictions previously provided to local boards of education or other agencies throughout the state. *AFT Michigan*[5] *v Michigan*, unpublished order of the United States District Court, Eastern District of Michigan, issued February 14, 2006 (Docket No. 06-10612).[6] The AAG also advised plaintiffs' counsel that on February 16, 2006, Superintendent Flanagan sent correspondence to schools in the state recalling the lists of school employees with iden-

---

[4] Under the school safety legislation, "listed offense" means "that term as defined in section 2 of the sex offenders registration act, 1994 PA 295, MCL 28.722." See 2005 PA 131, § 1230d(9)(c).

[5] AFT Michigan is the Michigan affiliate of the American Federation of Teachers, AFL-CIO.

[6] 2006 US Dist LEXIS 17057.

tifiers matching those in the State Police criminal history database.

According to defendants, plaintiffs first filed this lawsuit in the Court of Claims. Defendants removed that suit to federal court pursuant to 28 USC 1441. On March 31, 2006, the parties stipulated that plaintiffs' federal claim be dismissed with prejudice and the remaining claims be remanded to the state court from which the case had been removed. On April 4, 2006, plaintiffs' counsel signed a voluntary dismissal of the Court of Claims action. On the same day, plaintiffs filed the instant lawsuit in Ingham Circuit Court alleging four tort claims against defendants in their individual capacities: (1) libel per se; (2) interference with plaintiffs' business expectancy; (3) intentional infliction of emotional distress; and (4) false-light invasion of privacy. The case was assigned to Judge Beverley Nettles-Nickerson. Judge Nettles-Nickerson and Judge Draganchuk each denied the parties' request that the present case be reassigned to Judge Draganchuk. Chief Circuit Judge William E. Collette also denied the parties' request for reassignment because the two pending cases "involve[] two different types of actions."

On August 16, 2006, Judge Nettles-Nickerson heard defendants' motion for summary disposition under MCR 2.116(C)(4), (6), (7), and (8). The trial court granted defendants' motion pursuant to MCR 2.116(C)(6) because the MEA action was then pending before Judge Draganchuk. The court denied plaintiffs' motion for reconsideration by order entered September 14, 2006. Plaintiffs appeal by right.

II. ANALYSIS

We review de novo the trial court's decision on a motion for summary disposition. *Fast Air, Inc v Knight*, 235 Mich App 541, 543; 599 NW2d 489 (1999).

Summary disposition under MCR 2.116(C)(6) is properly granted when " '[a]nother action has been initiated between the same parties involving the same claim.' " *Fast Air, supra* at 544. "The court rule is a codification of the former plea of abatement by prior action." *Ross v Onyx Oil & Gas Corp*, 128 Mich App 660, 666; 341 NW2d 783 (1983) (referring to GCR 1963, 116.1[4]). The plea of abatement protected parties from being harassed by new suits brought by the same plaintiff involving the same questions as those in pending litigation. *Id.*; *Chapple v Nat'l Hardwood Co*, 234 Mich 296, 298; 207 NW 888 (1926). To invoke the plea, complete identity of parties is not necessary as long as the two actions are predicated on substantially the same facts. *Chapple, supra* at 298-299. Thus, "to abate a subsequent action, the two suits must be based on the same or substantially same cause of action, and as a rule the same relief must be sought." *Ross, supra* at 666 (citations omitted).

Plaintiffs argue that the trial court erred by dismissing this case under MCR 2.116(C)(6) because the instant case and the MEA lawsuit involved different parties. Although plaintiff Frohriep and others similarly situated might be members of the MEA, individual members of the MEA were not parties to the MEA suit. Further, while the MEA suit named Superintendent Flanagan as a defendant in his official capacity, the present case names Flanagan as a defendant in his individual capacity. More importantly, plaintiffs argue, the relief sought in the two suits is entirely different. In the MEA suit, declaratory and injunctive relief was sought. In this case, the individual plaintiffs seek money damages for intentional torts.

Defendants argue, to the contrary, that Frohriep was not only a member of the MEA, which represented his

interests, but that Frohriep himself also appeared and testified at hearings in the MEA suit. The defendants in each suit are also the same because Flanagan was a named party in each suit, and Hughes and Ciloski are employees of the MDE. Moreover, defendants argue, the claims in each suit were the same because they were based on the same operative facts. See *JD Candler Roofing Co, Inc v Dickson*, 149 Mich App 593, 600-601; 386 NW2d 605 (1986), in which this Court held that what was essentially a contract claim could not be litigated separately under both contract and tort theories.

We conclude that plaintiffs' arguments regarding MCR 2.116(C)(6) have merit. Under the plain language of the court rule, for it to apply to this case on the basis of the then-pending MEA lawsuit, the two lawsuits must be "between the same parties involving the same claim." In the MEA suit, a corporate entity, the MEA, sued another corporate entity, the MDE. In the instant case, individuals have sued other individuals. The only party common to the two lawsuits is defendant Flanagan, but in one suit he is named only in his official capacity, and in the other, he is a defendant only in his individual capacity. Although the two lawsuits arise out of the same operative facts, the two lawsuits are not "between the same parties." In addition, the claims for relief in the two lawsuits are different. As noted above, as a general rule, to abate a subsequent action the same relief must be sought in each action. *Ross, supra* at 666. A party may pursue different remedies in separate forums and need not elect between them until judgment is obtained in one or the other. *Zink v Weingarden*, 168 Mich App 211, 216; 423 NW2d 622 (1988). Thus, a plaintiff may pursue legal remedies in one forum while simultaneously pursuing equitable remedies in another.

*Id.* at 217-218. So, we conclude that the trial court erred by granting defendants summary disposition under MCR 2.116(C)(6).

Our conclusion that the trial court erred does not end our analysis. Defendants argued below that the trial court should grant them summary disposition for a number of other reasons, and assert those same reasons as alternative bases for affirming the trial court's decision. Plaintiffs argue that defendants' alternative arguments are not properly before the Court because defendants did not preserve them for appeal by filing a cross-appeal. Plaintiffs also note that the trial court's dismissal was without prejudice, and defendants now seek an order of dismissal with prejudice. Plaintiffs rely on *McCardel v Smolen*, 404 Mich 89; 273 NW2d 3 (1978), which held that an appellee "may not obtain a decision more favorable to them than was rendered by the [lower court]." *Id.* at 94-95. We conclude that plaintiffs' position lacks merit.

The general rule is that "a cross appeal is not necessary to urge an alternative ground for affirmance, even if the alternative ground was considered and rejected by the lower court or tribunal." *Boardman v Dep't of State Police*, 243 Mich App 351, 358; 622 NW2d 97 (2000), citing *Middlebrooks v Wayne Co,* 446 Mich 151, 166 n 41; 521 NW2d 774 (1994), and *Candelaria v BC Gen Contractors, Inc,* 236 Mich App 67, 83 n 6; 600 NW2d 348 (1999). This rule is consistent with the longstanding rule that this Court will affirm a lower court when it reaches the correct result even when the lower court does so for an erroneous reason. *Ellsworth v Hotel Corp of America*, 236 Mich App 185, 190; 600 NW2d 129 (1999); *Howe v Detroit Free Press, Inc,* 219 Mich App 150, 158; 555 NW2d 738 (1996). We conclude that the trial court reached the correct result because

defendants were entitled to summary disposition. Given the facts alleged in plaintiffs' complaint and the documents attached to it, plaintiffs' tort claims were barred by immunity granted by law. MCR 2.116(C)(7).

When a motion for summary disposition under MCR 2.116(C)(7) is filed with a court, the court must not only consider the pleadings but also any affidavits, depositions, admissions, or other documentary evidence that is submitted to the court. *Patterson v Kleiman*, 447 Mich 429, 434; 526 NW2d 879 (1994). When considering a motion under MCR 2.116(C)(7), "the contents of the complaint must be accepted as true unless specifically contradicted by the affidavits or other appropriate documentation submitted by the movant." *Patterson, supra* at 434 n 6.

A claim subject to governmental immunity is properly dismissed by summary disposition on the basis that the claim is barred. See *id.* at 432. In this regard, "[g]overnmental immunity is not an affirmative defense proffered by governmental defendants, but rather is a characteristic of government; therefore 'a party suing a unit of government must plead in avoidance of governmental immunity.' " *Kendricks v Rehfield*, 270 Mich App 679, 681; 716 NW2d 623 (2006), quoting *Mack v Detroit*, 467 Mich 186, 203; 649 NW2d 47 (2002). The *Kendricks* Court applied this principle to government employees.

In *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984), our Supreme Court addressed the common law of governmental immunity from tort liability for governmental agencies and their employees. Regarding government employees, the Court held:

> Judges, legislators, and the highest executive officials of all levels of government are absolutely immune from all

tort liability whenever they are acting within their respective judicial, legislative, and executive authority. Lower level officers, employees, and agents are immune from tort liability only when they are

a) acting during the course of their employment and are acting, or reasonably believe they are acting, within the scope of their authority;

b) acting in good faith; and

c) performing discretionary-decisional, as opposed to ministerial-operational, acts. [*Id.* at 592.]

In 1986, the Legislature substantially codified the holding of *Ross* by amending the governmental tort liability act (GTLA), MCL 691.1401 *et seq.* 1986 PA 175; *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 158 n 16; 615 NW2d 702 (2000). Two principles that guide interpretation of the statute are that the immunity conferred is construed broadly and its exceptions construed narrowly. *Id.* at 158. Pertinent to this case, MCL 691.1407 provides:

(2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

(3) Subsection (2) does not alter the law of intentional torts as it existed before July 7, 1986.

* * *

(5) A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority.

In this case, plaintiffs' complaint establishes that each defendant is an officer or employee of a governmental agency, the MDE. Defendant Flanagan is the MDE's "highest appointive executive official." MCL 691.1407(5); *Berlin, supra* at 161. Further, the gist of plaintiffs' complaint is that defendants committed torts while attempting to comply with the mandate of the school safety legislation to report to "the superintendent or chief administrator and the board or governing body of the school district, intermediate school district, public school academy, or nonpublic school" the results of comparisons between school employee data and state police criminal conviction data. MCL 380.1535a(15); MCL 380.1230d(7). Where defendants as officers and employees of the MDE are carrying out the statutorily authorized and mandated duties of the MDE, plaintiffs must plead facts to establish that defendants were acting outside the scope of their authority as officers of the MDE, or that governmental immunity did not otherwise apply. *Kendricks, supra* at 681.

In an effort to avoid governmental immunity, plaintiffs assert several conclusory allegations regarding

defendants' conduct.[7] But the only specific factual allegation regarding the alleged torts is that defendant Flanagan authored certain letters that were distributed to the various school administrators in the state enclosing a list of school employees having identifiers matching criminal history data. Although plaintiffs allege that defendant Hughes authored an affidavit *after* the lists were distributed regarding the decisional process the MDE employed when implementing the school safety legislation, plaintiffs do not specifically allege anything that Hughes did in either preparing or distributing the criminal history comparison lists. Likewise, although Flanagan refers to defendant Ciloski as a source of information regarding the school safety legislation in correspondence to counsel for the MEA and also names Ciloski as the MDE official to whom local school officials should report the school district's action regarding the lists, plaintiffs allege no specific conduct of defendant Ciloski in either preparing or distributing the criminal history comparison lists. To gloss over this deficiency, plaintiffs vaguely allege that defendants were acting in concert. But, even so, plaintiffs fail to allege any facts taking defendants' actions outside the scope of their employment with the MDE while acting to implement the school safety legislation.

Plaintiffs rely heavily on Hughes's affidavit, which avers that the MDE "expected" the comparison of MDE data with state police criminal history data to result in some "false hits," i.e., "instances where some information matched but the person identified on the registry of

---

[7] For example, without pleading any facts in support, plaintiffs allege in their complaint that the acts "which form the basis of Plaintiffs' claims were committed outside the scope of [each defendant's] authority, amounted to not less than gross negligence on his part[,] and said Defendant could not have reasonably believed that he had lawful authority to engage in those acts."

educational personnel had not in fact been convicted of the associated conviction in the criminal history database." Nevertheless, plaintiffs have failed to allege any facts from which it could be inferred that any of the defendants had prior knowledge that any specific match was, in fact, a "false hit." Moreover, even if defendants had prior knowledge of specific "false hits," defendants' conduct still would not be outside the scope of their employment with the MDE, because they were acting to comply with the school safety legislation.

In *American Transmissions, Inc v Attorney General*, 454 Mich 135; 560 NW2d 50 (1997), our Supreme Court applied MCL 691.1407(5) to the plaintiffs' claim that then-Attorney General Frank Kelley had defamed them during a news conference. In deciding the case, our Supreme Court rejected this Court's analysis in *Gracey v Wayne Co Clerk*, 213 Mich App 412; 540 NW2d 710 (1995). The plaintiffs in *Gracey* alleged that the county clerk had defamed them at a press conference. The *Gracey* Court essentially adopted an intentional-tort exception to MCL 691.1407(5), opining that, assuming the clerk "had the authority to call a press conference to address any improprieties that might have occurred during an election, he nevertheless had no authority to conduct a press conference for the purpose of disseminating false information with the intent to sway an election." *Id.* at 418. Thus, the *Gracey* Court reasoned that if the clerk intended to disseminate false information, "then he was not acting within the scope of his executive authority, and he is not entitled to absolute immunity for those acts." *Id.* Our Supreme Court ruled that *Gracey* was incorrectly decided. *American Transmissions, supra* at 143. The Court concluded that the grant of immunity in MCL 691.1407(5) was clear, and it did not contain a malevolent-heart exception. *American Transmissions, supra* at 143. The Court ruled that

Attorney General Kelley was immune from tort liability because he was acting within the scope of his executive authority when responding to doubts about an earlier fraud investigation his department had conducted. *Id.* at 144.

This Court followed *American Transmissions, supra,* in *Brown v Detroit Mayor,* 271 Mich App 692, 722; 723 NW2d 464 (2006), a case in which the plaintiffs claimed that the mayor had defamed them at a press conference. Although the plaintiffs conceded that the mayor had acted within the scope of his employment when he held a press conference, the plaintiffs nevertheless asserted that the mayor acted outside the scope of his authority because he made the comments for purely personal reasons. *Id.* at 722. This Court disagreed, even though the mayor made "arguably defamatory remarks about" the plaintiffs. *Id.* at 723. Relying on the holding of *American Transmissions,* the *Brown* Court opined, "regardless of whether Mayor Kilpatrick intended to lie or mislead the public about the two plaintiffs, he was acting within the scope of his authority as mayor to respond to questions about personnel and city issues." *Brown, supra* at 723. Further, this Court opined that because "there is no motivation or intent exception to the immunity provided by MCL 691.1407(5)," it could not conclude "that Mayor Kilpatrick was acting outside the scope of his authority, and he is therefore entitled to absolute immunity under the GTLA." *Id.*

Just as Attorney General Kelley and Mayor Kilpatrick were acting within the scope of their executive authority and therefore absolutely immune from tort liability under MCL 691.1407(5), so too, in this case, is defendant Flanagan absolutely immune from tort liability while acting within the scope of his executive authority to implement the legislative mandates of the

school safety legislation. With respect to defendants Hughes and Ciloski, as we have already noted, plaintiffs have failed to allege any specific action either defendant took in the furtherance of preparing or distributing the criminal history comparison lists that form the basis of plaintiffs' tort claims. To the extent that Hughes and Ciloski may have assisted the MDE, the MDE is a governmental agency that was engaged in the exercise or discharge of a governmental function. See MCL 691.1401(f).[8] Further, plaintiffs have alleged no facts from which it can be inferred that either Hughes or Ciloski was acting outside the scope of his authority or that they acted in a grossly negligent manner. Accordingly, plaintiffs have failed to plead facts in avoidance of governmental immunity, *Kendricks, supra* at 681, and Hughes and Ciloski are immune from plaintiffs' tort claims. MCL 691.1407(2). Defendants were therefore entitled to summary disposition pursuant to MCR 2.116(C)(7). Consequently, we conclude that the trial court reached the correct result, albeit for the wrong reason. *Ellsworth, supra* at 190; *Howe, supra* at 158.

We affirm.

---

[8] MCL 691.1401(f) provides in part: " 'Governmental function' is an activity that is expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." Here, the conduct that forms the basis of plaintiffs' tort claims was expressly or impliedly authorized by the school safety legislation.