# STATE OF MICHIGAN

# COURT OF APPEALS

KENNETH J. BOGOS,

        Plaintiff-Appellee,

and

LISA TAYLOR-BOGOS and JOHN J. BOGOS,

        Plaintiffs,

v

CLAYTON J. SPORE,

        Defendant-Appellant,

and

REGENTS OF THE UNIVERSITY OF
MICHIGAN,

        Defendant.

UNPUBLISHED
February 17, 2015

No. 318900
Livingston Circuit Court
LC No. 13-027344-NI

Before: RIORDAN, P.J., and MURPHY and BOONSTRA, JJ.

PER CURIAM.

Defendant Clayton Spore ("defendant"),[1] who was a volunteer for a University of Michigan study concerning "The Benefits of Crash Warning Systems on Teen Driving Behavior," appeals by right an order denying his motion for summary disposition. In issuing that order, the trial court found genuine issues of material fact regarding whether defendant was grossly negligent and therefore held that defendant was not entitled to immunity as a matter of law under the Government Tort Liability Act, MCL 691.1401 *et seq*. See MCL 691.1407(2). We reverse and remand for entry of summary disposition in favor of defendant.

---

[1] Defendant Regents of the University of Michigan was dismissed from the suit by stipulation and is not a party to this appeal.

# I. PERTINENT FACTS AND PROCEDURAL HISTORY

On October 28, 2011, plaintiff Kenneth Bogos was stopped for traffic while operating a vehicle on Old US 23. Plaintiff John Bogos, his father, was a passenger. A vehicle owned by the University of Michigan and driven by defendant struck plaintiffs' vehicle from the rear. Kenneth and John were injured in the accident. Plaintiffs alleged that defendant was negligent in operating his vehicle, and that defendant was liable both for the injuries to Kenneth and John and for plaintiff Lisa Taylor-Bogos' loss of consortium. Plaintiffs also alleged that the University of Michigan was liable for plaintiffs' damages as the owner of the vehicle and as the employer of defendant.

Defendant alleged in his answer that he was driving a University of Michigan vehicle as an agent of the University, and that he was acting within the scope of a university research study at the time of the accident. Defendant asserted the defense of governmental immunity, and alleged that plaintiffs had failed to plead that defendant was grossly negligent in avoidance of immunity.

Plaintiffs amended their complaint to include allegations that defendant had been grossly negligent in operating the vehicle. Plaintiffs alleged that defendant was 16 years old and was participating in a study intended to observe unsafe driving habits of teens, leading him to drive in an unfamiliar car and while distracted by cameras in the car. Plaintiffs elaborated, in responding to defendant's motion for summary disposition, that defendant was driving at a high rate of speed, that he failed to clear his car's windshield of frost, that he was texting while driving, and that he was talking on the phone while adjusting the defrost controls when he hit plaintiffs. Defendant acknowledged that, at the time of the accident, he was participating in a University of Michigan driving study where 16 year olds are videotaped while driving and monitored for three months.

The proposal for the study in question, called "Benefits of Crash Warning Systems on Teen Driving Behavior," stated that the study would be investigating the effectiveness of integrated vehicle-based safety systems for teen drivers in a field test.[2] Research participants received a vehicle to drive for 14 weeks, and their actions and surroundings were recorded while the car was running. Participants were expected to obey all motor vehicle laws and wear a seatbelt, and were not asked to perform any unsafe driving actions.

Defendant stated at his deposition that he was instructed to drive as he normally does and was not given any rules. He received a car that was a couple of years old and drove it every day. Defendant had been in the study for about two months before the accident.

On the day of the accident, the car was in the driveway as defendant prepared to drive it to school. Defendant stated that it was a little cold, so he had to let the car run to warm up and defrost the windshield. Defendant said he waited for the windshield to clear and drove toward school. Defendant stated he could see "pretty well" and then used the windshield wipers to completely clear the windshield. The window was not clear at the camera location, however. Defendant said that he had turned off his street, and was accelerating and turning the defroster

---

[2] Defendant was in the control group, so his car was not equipped with crash warning systems.

off, when he saw that traffic was backed up at a stoplight. Defendant stated that it was unusual to have traffic backed up at that stoplight and that the accident happened because he did not expect the backup and was unable to stop in time. At certain times before the accident, defendant was on his phone or texting, but he was not doing so at the time of the accident.

Kenneth stated at his deposition that it was light enough outside at the time of the accident that headlights were not required, and that he did not know whether his own vehicle's lights were activated. The speed limit on the road was 55 miles per hour. Kenneth was at a stoplight behind three other cars with his foot on the brake when he looked in the rearview mirror. He stated that he saw a car that was approaching "too fast" and knew that he was going to be struck.

Defendant moved for summary disposition, arguing that there were no facts that would support a finding of gross negligence in order to avoid governmental immunity, and that there was no proof that defendant had caused plaintiffs' injuries. Plaintiffs argued that summary disposition was inappropriate because there were several genuine issues of material fact regarding gross negligence for determination by a jury. The trial court viewed the recording of defendant driving before the accident.

Plaintiffs provided an affidavit of Scott Bogard, a University of Michigan employee. Bogard attested that he was responsible for compiling the video of the defendant's accident obtained from the various cameras in the vehicle. Bogard stated that the data recording started when the car engine was turned on and ended when the engine was turned off. A forward-looking camera was mounted in a shroud at the top of the windshield next to the rear view mirror, and the shroud blocked defroster air from reaching the windshield in front of the camera. The forward-looking camera was a half-inch "bullet" type camera mounted within an inch of the windshield that did not show any area of the windshield that was not directly in front of the lens. Bogard stated that a camera was mounted near the dome light to view the instrumentation area and driver actions, and a camera was on the driver's side windshield pillar of the vehicle to view the driver's face. Cameras were mounted below both side rear view mirrors to capture the driver's blind spots. On the video of the forward picture was data regarding speed, throttle percent, and whether the turn or brake light signals were engaged.

The video shows that defendant warmed the car for 2 minutes and 35 seconds, as the right side of the windshield is seen defrosting in the cabin forward-facing camera. He activated his headlights at approximately the 1 minute and 25 second mark. Defendant then drove the car while periodically attending to his phone. Defendant stopped the car at four minutes into the video and attended to his phone while remaining stopped. Five seconds before the accident, defendant's eyes left the road briefly to look down and manipulate the center controls, then looked forward, and then looked out the side window and in the direction of the rear-view mirror before looking startled and applying the brakes two seconds before the collision while traveling 47 miles per hour. The collision appears to occur at 4:38 of the video while the vehicle was traveling around 32 miles per hour.

Plaintiffs' expert, Timothy George, an automobile accident investigator who reviewed the depositions, videos, and reports of the accident, attested in an affidavit that it was his opinion that defendant's conduct amounted to gross negligence because it was reckless and demonstrated

-3-

a substantial lack of concern for whether injury resulted. George opined that defendant engaged in an extraordinary series of extremely dangerous activities by driving as an inexperienced driver of an unfamiliar car at an unreasonable rate of speed given that frost remained on the windshield. George noted the presence of multiple self-created distractions, such as video recorders, cell phone use, and adjusting environmental controls. George further opined that defendant's gross negligence was the cause of the accident.

The trial court denied defendants' motion for summary disposition. The trial court remarked that there were sufficient questions of fact that a jury should decide whether Defendant's conduct constituted gross negligence. This appeal followed.

## II. STANDARD OF REVIEW

A trial court's determination of a motion for summary disposition is reviewed de novo. *Ormsby v Capital Welding, Inc*, 471 Mich 45, 52; 684 NW2d 320 (2004). In reviewing a motion for summary disposition based on immunity, MCR 2.116(C)(7), this Court considers the affidavits, depositions, admissions, and other documentary evidence to determine whether the movant is entitled to immunity as a matter of law. *Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004). The evidence is viewed in a light most favorable to the nonmoving party, and all legitimate inferences are drawn in favor of the nonmoving party. *Jackson v Saginaw Co*, 458 Mich 141, 142; 580 NW2d 870 (1998).

## III. ANALYSIS

Governmental immunity from tort liability is governed by MCL 691.1407; MCL 691.1407(2) determines immunity for individual lower-ranking public officials accused of negligence. *Odom v Wayne Co*, 482 Mich 459, 479-480; 760 NW2d 217 (2008). MCL 691.1407(2) provides:

> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:
>
> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

-4-

Under MCL 691.1407, immunity is broadly interpreted and exceptions to it are narrowly construed. *Frohriep v Flanagan*, 275 Mich App 456, 468; 739 NW2d 645 (2007).

"'Gross negligence' means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(7)(a); *Costa v Community Emergency Med Services, Inc*, 475 Mich 403, 411; 716 NW2d 236 (2006). Gross negligence involves a "willful disregard of precautions or measures to attend to safety" and a disregard of substantial risks to safety. *Tarlea v Crabtree*, 263 Mich App 80, 90; 687 NW2d 333 (2004). When acting with gross negligence, it appears that the actor "simply did not care about the safety and welfare" of others. *Tarlea*, 263 Mich App at 90.

Evidence of ordinary negligence does not create a question of fact regarding gross negligence. *Love v Detroit*, 270 Mich App 563, 565; 716 NW 2d 604 (2006). A claim can always be made that an accident could have been avoided with extra precautions, but even the ordinary negligence standard does not require that all precautions be taken to safeguard others. *Tarlea*, 263 Mich App at 90. Conduct that constitutes gross-negligence is "substantially more than negligent" conduct. *Costa*, 475 Mich at 411.

Plaintiffs argue that defendant engaged in a series of negligent activities over time that cumulatively combined to constitute gross negligence and create the accident. The appropriate consideration is whether defendant acted with gross negligence under the totality of the circumstances. *Kieft v Barr*, 391 Mich 77, 80; 214 NW2d 838 (1974). Summary disposition is precluded where reasonable jurors honestly could have reached different conclusions with respect to whether a defendant's conduct constituted gross negligence. *Kendricks v Rehfield*, 270 Mich App 679, 682; 716 NW 2d 623 (2006). However, if reasonable minds could not differ, the issue may be determined by summary disposition. *Oliver v Smith*, 269 Mich App 560, 565; 715 NW2d 314 (2006).

Defendant acknowledges he was at fault in the accident. However, he argues that his actions of adjusting controls and looking in the mirror prior to unsuccessfully braking to avoid the accident could have been negligent but not grossly negligent. The primary conduct of defendant that produced the accident was a failure to bring his vehicle to a full stop before it collided with the back of plaintiff's vehicle. The video recordings confirmed defendant's testimony that he turned and accelerated within 20 seconds to approximately 47 miles per hour. During this time, defendant briefly looked down at one of his console controls while manipulating it, and also looked outside the driver's window and/or into the driver's side mirror. Defendant moved his eyes from the side to the direction of the rear view mirror before immediately snapping his head back to center while the break indicator light signaled. The car decelerated to around the lower to mid-thirties miles per hour range and the collision seemed to occur within two seconds of braking. Thus, the accident resulted from defendant's inability to stop due to inadequate distance to stop given his rate of speed. It is apparent that defendant could have increased the time he had to stop and may have avoided the collision if he had been moving more slowly or had noticed earlier that braking was required. Thus, defendant's inattentiveness to what was in front of him until it was too late culminated in an accident.

Considering the totality of the circumstances, it is apparent that defendant's conduct amounts to ordinary negligence, rather than gross negligence. Defendant did not exceed the

speed limit, took steps to clear his windshield of frost and did not proceed until the windshield was mostly clear (apart from a small area where the camera blocked the defroster), activated his headlights, used his side and rear mirrors, and applied his brakes prior to the accident. Compare *Kieft*, 391 Mich at 79 (finding a question of fact existed as to gross negligence when the defendant was driving at an excessive speed and was unable to stop the vehicle at a marked railroad crossing). Here, no reasonable juror could find that defendant's conduct evidenced a "willful disregard of precautions or measures to attend to safety" and a disregard of substantial risks to safety. *Tarlea*, 263 Mich App at 90. Although defendant may have been negligent in failing to begin slowing his vehicle at an appropriate time to avoid a rear-end collision, such conduct is indicative of ordinary, rather than gross, negligence and does not create a material question of fact concerning gross negligence. *Love v Detroit*, 270 Mich App at 565; see also MCL 257.402(a).[3]

Reversed and remanded for entry of summary disposition in favor of defendant. Because we find that no reasonable juror could conclude that defendant's conduct was grossly negligent, we do not address defendant's alternative argument regarding causation. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ William B. Murphy
/s/ Mark T. Boonstra

---

[3] On appeal, plaintiffs assert for the first time that defendant did not establish that the University of Michigan was "engaged in the exercise or discharge of a governmental function" by conducting the research study in which defendant was a participant. See MCL 691.1407(2)(b). Plaintiffs did not assert this argument before the trial court; in fact plaintiff's counsel referred to defendant as a "government volunteer" at the motion hearing. We therefore decline to consider this argument raised for the first time on appeal. See *Fast Air v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999).