*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ARI-EL FINANCIAL, LLC,

        Plaintiff-Appellee,

v

JOE BARBAT, NORA BARBAT, NORA BARBAT
LIVING TRUST DATED 1/2/2003, and BARBAT
HOLDINGS, LLC,

        Defendants-Appellants.

UNPUBLISHED
March 17, 2026
2:38 PM

No. 370180
Oakland Circuit Court
LC No. 2022-197870-CB

Before: BORRELLO, P.J., and MARIANI and TREBILCOCK, JJ.

PER CURIAM.

Defendants, Joe Barbat, Nora Barbat, Nora Barbat Living Trust Dated 1/2/2003, and Barbat Holdings, LLC (collectively, defendants), appeal as of right from a judgment entered by the trial court for plaintiff, Ari-El Financial, LLC, in the amount of $2,765,942.47, plus interest. The trial court entered the judgment after it ruled that plaintiff was entitled to summary disposition under MCR 2.116(C)(10) on plaintiff's claims for breach of a promissory note and breach of a guaranty. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This case concerns an alleged $2.1 million loan default. Plaintiff filed this action against defendants seeking repayment of a $2,100,000 loan made by plaintiff to Barbat Holdings. In the complaint, plaintiff alleged that defendant Barbat Holdings had executed a promissory note on December 18, 2017 promising to repay the loan by December 18, 2022, and that Barbat Holdings had failed to repay the loan. Plaintiff also alleged that the remaining defendants had executed a guaranty for the loan, making all defendants jointly and severally liable for the outstanding debt. Plaintiff contended that it was entitled to the outstanding principal, interest, and collection expenses.

Plaintiff moved for summary disposition, citing no genuine issue of material fact that defendants executed the relevant loan documents and that the loan had not been repaid. Plaintiff

submitted an affidavit by Arie Leibovitz, who is the manager of plaintiff Ari-El Financial. Leibovitz averred that no payments had been received on the debt. Defendants opposed the motion and contended, as relevant to the resolution of the present appeal, that the matter was subject to an arbitration agreement.

The promissory note that plaintiff sought to enforce contained the following relevant language:

> This Note evidences the Capital Contribution Loan (as defined in §4.1 of the Operating Agreement of River Houze, LLC (the "Operating Agreement") and the provisions of the Operating Agreement relating to the Capital Contribution Loan are hereby incorporated herein by this reference.

In short, Joe Barbat controlled LivRiverHouze, LLC, while Arie Leibovitz controlled River Houze Junior, LLC. Defendants provided a copy of the November 30, 2017 operating agreement of River Houze, LLC (the Operating Agreement). According to the Operating Agreement, the members of River Houze were LivRiverHouze, LLC, River Houze Junior, LLC, and JeffRiverHouze Management, Inc. Joe Barbat was the manager of LivRiverHouze, LLC, and Arie Leibovitz was the manager of River Houze Junior, LLC. Hence, the Operating Agreement also expressly indicated that the members of River Houze, LLC were Joe Barbat, Arie Leibovitz, and JeffRiverHouze Management. The stated business and purpose of River Houze consisted "solely of the ownership, operation and management" of a real estate project in Detroit.

The Operating Agreement contained the following language relevant to the members' capital contributions and capital contribution loans:

> **Section 4.1 <u>Initial Capital Contributions.</u>** The Members shall be deemed to have made the capital contributions to the Company set forth In attached Exhibit "A". The Members' interests in the total capital of the Company (the "Sharing Ratios") are also set forth In Exhibit "A"[.] Any additional Member who is admitted to the Company in accordance with this Agreement shall make the capital contribution set forth in his admission agreement. The Members are hereby authorized to replace Exhibit "A" with an updated version when appropriate so as to evidence any changes in the identity of the Members, the amounts of their capital contributions or their Sharing Ratios in accordance with this Agreement[.] No interest shall accrue on any Member's capital contribution and no Member shall have any right to withdraw or to be repaid his capital contribution except as provided in this Agreement. In the event any portion of the initial capital contribution of any Member is paid by way of a loan from the other Member, the borrowing Member shall enter into a loan agreement for repayment of such loan consistent with the terms of this Agreement as well as a personal guaranty of the borrowing Member for the loan amount. In addition, each of the Members agrees to use their best efforts to seek a lender willing to refinance the initial contributions in an amount sufficient to repay amounts lent by one Member to the other for the initial capital contribution not later than five (5) years following commencement of the operation of the Company. It is further agreed that interest shall accrue on such amounts loaned by one member to the other for the initial capital contribution at

the rate of four percent (4%) per annum, which interest shall be accumulated on an annual basis but shall not be compounded.

As of the date of this Agreement, it is understood and agreed that LivRiverHouze, LLC, will contribute Two Million Dollars ($2,000,000.00) of its fifty percent (50%) capital contribution requirement, and that Arie or an affiliate of Arie (the "Lender Entity"), will loan (the "Capital Contribution Loan") the balance of LivRiverHouze, LLC's required initial contribution to LivRiverHouze, LLC to be paid to the Company pursuant to a loan agreement to be executed between the Lender Entity and LivRiverHouze, LLC. A personal guaranty in favor of the Lender Entity in connection with the Capital Contribution Loan has been executed and delivered to the Lender Entity. Notwithstanding anything contained herein to the contrary, in no event shall Arie and the Lender Entity be required to contribute more than $8,000,000.00 (including loans to LivRiverHouze, LLC) hereunder except as provided in Section 4.2 below.

Finally, the Operating Agreement also contained the following provision regarding arbitration of disputes between the members:

Section 12.10 **Dispute Resolution.** To facilitate resolution of disputes that may arise under this Agreement, the Members shall submit any dispute on any matters whatsoever arising out of or in any way connected with this Agreement, the Company or the relationship between the Members for binding arbitration. The arbitration proceedings will be conducted by one (1) arbitrator chosen by the legal representatives of the Members, and such arbitration shall be held at a location in Oakland County, Michigan chosen by the arbitrator. If the Members do not agree upon the appointment of an arbitrator, the arbitrator shall be appointed in accordance with the commercial arbitration rules of the American Arbitration Association upon application by any Member. The proceedings will be conducted according to the then current commercial arbitration rules of the American Arbitration Association and the Federal Arbitration Act. Each party shall bear their own costs and expenses for the arbitration and share equally in the costs required for the arbitration. Judgment upon arbitrator's award may be entered in any court of competent jurisdiction.

The trial court dispensed with oral argument and issued a written opinion and order granting summary disposition in favor of plaintiff. The trial court concluded that defendants had not produced any evidence to rebut Leibovitz's affidavit indicating that no payments had been made on the promissory note and that there accordingly was no genuine question of material fact that the note and guaranty had been breached by defendants. The trial court found defendant's argument regarding the arbitration provision to be "unresponsive" and beyond the scope of plaintiff's motion for summary disposition because the arbitration clause was intended to govern disputes among members rather than claims between lenders and borrowers. Moreover, under MCR 3.602, defendants carry the burden to prove the existence of an arbitration agreement governing the dispute. The court further found that the promissory note did not incorporate the arbitration provision of the Operating Agreement and that there was no binding arbitration agreement relative to the instant dispute.

## II. STANDARD OF REVIEW

A trial court's summary disposition ruling is reviewed de novo on appeal. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Summary disposition is warranted under MCR 2.116(C)(10) if "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A genuine question of material fact exists if the record, when viewed in a light most favorable to the nonmoving party, "leaves open an issue upon which reasonable minds might differ." *El-Khalil*, 504 Mich at 160 (quotation marks and citation omitted). This Court reviews de novo the question whether a particular issue is subject to arbitration, as well as matters of contractual interpretation. *Lichon v Morse*, 507 Mich 424, 436; 968 NW2d 461 (2021).

## III. ANALYSIS

## A. ARBITRABILITY

The issue of arbitrability turns on the issue of whether any party ever agreed to arbitrate this dispute. Defendants advance multiple grounds for reversal of the trial court's judgment. However, all arguments ultimately reduce to a single dispositive issue: whether the trial court erred in declining to compel arbitration pursuant to the arbitration clause contained in the River Houze Operating Agreement.

In *Altobelli v Hartmann*, 499 Mich 284, 295-296; 884 NW2d 537 (2016), our Supreme Court articulated the governing framework for arbitration agreement construction:

> "Arbitration is a matter of contract." *Kaleva-Norman-Dickson Sch Dist No 6 v Kaleva-Norman-Dickson Sch Teachers' Ass'n*, 393 Mich 583, 587; 227 NW2d 500 (1975). Accordingly, when interpreting an arbitration agreement, we apply the same legal principles that govern contract interpretation. See *FJ Siller & Co v City of Hart*, 400 Mich 578, 581; 255 NW2d 347 (1977). Our primary task is to ascertain the intent of the parties at the time they entered into the agreement, which we determine by examining the language of the agreement according to its plain and ordinary meaning. See *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 174; 848 NW2d 95 (2014). In considering the scope of an arbitration agreement, we note that "[a] party cannot be required to arbitrate an issue which [it] has not agreed to submit to arbitration." *Kaleva*, 393 Mich at 587. "The general policy of this State is favorable to arbitration." *Detroit v A W Kutsche*, 309 Mich 700, 703; 16 NW2d 128 (1944). The burden is on the party seeking to avoid the agreement, not the party seeking to enforce the agreement. *McKinstry v Valley Obstetrics-Gynecology Clinic, PC*, 428 Mich 167, 184; 405 NW2d 88 (1987). In deciding the threshold question of whether a dispute is arbitrable, a reviewing court must avoid analyzing the substantive merits of the dispute. *Kaleva*, 393 Mich at 594-595. If the dispute is arbitrable, "the merits of the dispute are for the arbitrator." *Id*. at 595. [Alterations in original.]

Arbitrability is determined under a tripartite analytical framework:

"1) is there an arbitration agreement in a contract between the parties; 2) is the disputed issue on its face or arguably within the contract's arbitration clause; and 3) is the dispute expressly exempted from arbitration by the terms of the contract." [*In re Nestorovski Estate*, 283 Mich App 177, 202; 769 NW2d 720 (2009) (citation omitted).]

Here, plaintiff is not a signatory to the Operating Agreement containing the arbitration provision, and therefore lacks privity with respect to that agreement. *Id.* The principle of corporate separateness precludes extension of the arbitration clause to non-parties absent circumstances warranting veil-piercing. *Seasword v Hilti, Inc (After Remand)*, 449 Mich 542, 547; 537 NW2d 221 (1995). Defendants have not demonstrated any basis for disregarding plaintiff's separate corporate existence. *Id.* at 548.

Moreover, neither the note nor the guaranty contains an arbitration provision. Defendants contend that the note incorporated by reference the Operating Agreement's arbitration clause through the parties' adoption of "the provisions of the Operating Agreement relating to the Capital Contribution Loan." This argument fails. We agree with the trial court that, based on the plain terms of the note and Operating Agreement, the parties' selective incorporation of the portion of the Operating Agreement specified in the note does not extend to § 12.10, which contains the arbitration provision. The trial court properly concluded that no agreement to arbitrate exists between these parties. "It goes without saying that a contract cannot bind a nonparty," and "[a]rbitration, which is a matter of contract, cannot be imposed on a party that was not legally or factually a party to the agreement wherein an arbitration provision is contained." *AFSCME Council 25 v Wayne Co*, 292 Mich App 68, 80; 811 NW2d 4 (2011) (quotation marks and citation omitted). "[A] party cannot be required to arbitrate an issue which [it] has not agreed to submit to arbitration." *Lichon*, 507 Mich at 437 (quotation marks and citation omitted; second alteration in original). Furthermore, the guaranty contains an express forum-selection provision authorizing plaintiff to initiate proceedings in any court within this state, thereby negating any implied arbitration obligation.[1]

## B. THE FIRST-FILED DOCTRINE

Defendants alternatively moved for dismissal pursuant to the first-filed doctrine, contending that the pending arbitration proceeding constituted a prior-filed action involving identical parties and substantially similar claims. Defendants stressed that Joe's arbitration claims included fraud in the inducement, specifically alleging that Leibovitz fraudulently induced his

---

[1] The guaranty states, in relevant part: "This Guaranty and the rights and liabilities of the parties shall be governed by the laws of the State of Michigan. *Guarantor agrees that any legal action or proceeding against him, with respect to any of his obligations under this Guaranty may be brought in any court of the State of Michigan, as Lender, in its sole discretion, may elect.* By the execution and delivery of this Guaranty, Guarantor submits to and accept[s], for himself and in respect of his property, generally and unconditionally, the jurisdiction of those courts with regard to any such action or proceeding. Guarantor waives any claim that the State of Michigan is not a convenient forum or the proper venue for any suit, action or proceeding." (emphasis added).

investment in the apartment building. However, the arbitration's "identity of parties" aspect fails because plaintiff is not a party to these proceedings, nor are the claims substantially similar.

The trial court denied defendants' motion, reasoning as follows:

With regard to the first-filed doctrine, it simply recasts in another guise the arbitration argument. The only substantive difference is that it points out that the arbitration proceeding was commenced before this lawsuit. For the reasons articulated above, this case is not subject to arbitration, so the order of the filings is irrelevant.

Defendants argue that MCR 2.116(C)(6) embodies the first-filed doctrine and supported dismissal of this action because the arbitration case was filed before this action. Summary disposition is available under MCR 2.116(C)(6) when "[a]nother action has been initiated between the same parties involving the same claim."

The trial court correctly declined to grant defendants relief on this ground. To establish identity of parties and claims, a clear framework must be met: 1. Both proceedings must involve "the same parties"; and 2. Both proceedings must address "the same claim." Here, defendants failed to meet either requirement. As explained in Section A, plaintiff is neither a party to the arbitration proceedings nor bound by the arbitration clause in the Operating Agreement. See *Dairyland Ins Co v Mews*, 347 Mich App 568, 587; 16 NW3d 529 (2023) (confirming that "the 'same parties' language of MCR 2.116(C)(6) requires that relevant parties, i.e., the moving and opposing party, be the exact same in both actions"). In terms of the claims, the arbitration involves different allegations, causes of action, and requests for relief, which are distinct from those in the present action. See *Frohriep v Flanagan*, 275 Mich App 456, 464; 739 NW2d 645 (2007), rev'd in part on other grounds by 480 Mich 962 (2007) (explaining that "the two suits must be based on the same or substantially same cause of action, and as a rule the same relief must be sought") (quotation marks and citation omitted). Accordingly, defendants failed to demonstrate sufficient identity of parties and claims in both proceedings. Defendants therefore failed to establish entitlement to summary disposition under MCR 2.116(C)(6) and (I)(2). We discern no error by the trial court.

## C. THE FIRST-SUBSTANTIAL-BREACH DOCTRINE

Defendants additionally argue that because Leibovitz committed the first breach between the parties, plaintiff is barred from pursuing this action under the first-substantial-breach doctrine. The trial court rejected this argument primarily because defendants failed to support it with proper authority or evidence.

A party who materially breaches a contract first is precluded from maintaining an action against the other party for subsequent breach or nonperformance. *Michaels v Amway Corp*, 206 Mich App 644, 650; 522 NW2d 703 (1994). This doctrine applies exclusively to substantial breaches. *Id*. Substantiality is determined by whether the nonbreaching party received the benefit it reasonably expected under the contract. *Able Demolition, Inc v City of Pontiac*, 275 Mich App 577, 585; 739 NW2d 696 (2007). A substantial breach is one that "effect[s] such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible, such as the causing of a complete failure of consideration or

the prevention of further performance by the other party." *McCarty v Mercury Metalcraft Co*, 372 Mich 567, 574; 127 NW2d 340 (1964) (citations omitted and alteration added).

Defendants have not properly shown that the trial court should have dismissed this case on the ground that plaintiff breached the terms of the note or guaranty. As the trial court discussed in its ruling, defendants never raised any argument regarding the validity of the note or guaranty, including whether they received the loaned funds or repaid the loan. Moreover, defendants' argument does not address any actual breach attributed to plaintiff. While defendants argue that Leibovitz committed the first substantial breach, those allegations do not directly implicate plaintiff's liability for any breach of the note. Therefore, defendants cannot avoid summary disposition for this reason.

Affirmed. Plaintiff having prevailed is entitled to costs. MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ Philip P. Mariani
/s/ Christopher M. Trebilcock